**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**CHRISTOPHER RILEY and
LYNN RILEY**

    **Plaintiffs,**

v.                                                    **No:**

                                                          **JURY DEMANDED**

**METHODIST HEALTHCARE MEMPHIS HOSPITALS,
a/k/a METHODIST UNIVERSITY HOSPITAL,
SEMMES MURPHEY CLINIC, P.C.,
L. MADISON MICHAEL, and JOHN DOES 1-25**

    **Defendants.**

**COMPLAINT**

Come now the Plaintiffs and allege the following for cause of action:

**I.
NOTICE REQUIRED BY §29-26-121**

1. The Plaintiffs have given Notice to Defendants pursuant to T.C.A. §29-26-121. Proof of Notice is attached hereto as collective Exhibit 1. The T.C.A. §29-26-122 Certificate of Good Faith is attached hereto as Exhibit 2.

**II.
JURISDICTION, VENUE, AND PARTIES**

2. The acts complained of occurred in the City of Memphis, Shelby County, Tennessee.

3. The Plaintiff, Christopher Riley, is an adult resident citizen of the State of Mississippi. Mr. Riley underwent medical treatment and was hospitalized as an inpatient at Methodist University Hospital, located at 1265 Union Avenue, Memphis, Tennessee. Mr. Riley was initially hospitalized on October 2, 2014 and was discharged on October 9, 2014. Mr. Riley was readmitted on October 13, 2014 and discharged on October 24, 2014.

4. The Plaintiff, Lynn Riley, is the wife of Plaintiff Christopher Riley, and is an adult resident citizen of the State of Mississippi.

5. The Defendant, Methodist Healthcare Memphis Hospitals a/k/a Methodist University Hospital, (hereinafter referred to as "Methodist") is a Tennessee corporation duly licensed in the State of Tennessee with its principal place of business in the State of Tennessee. Methodist may be served with process in this action by serving its Registered Agent for service of process: Lynn Field, 1211 Union Avenue, Ste. 700, Memphis, Tennessee 38104-6600.

6. The Defendant, L. Madison Michael, M.D., is, upon information and belief, an adult resident citizen of the State of Tennessee.

7. The Defendant, Semmes Murphey Clinic, P.C., is a Tennessee corporation duly licensed in the State of Tennessee with its principal place of business in the State of Tennessee. Semmes Murphey Clinic, P.C. may be served with process in this action by serving its Registered Agent for service of process: John A. Lewis, 6325 Humphreys Blvd., Memphis, Tennessee 38120-2300.

8. John Does 1-25 are employees or agents of Methodist or other Defendants who, directly or indirectly, provided care to or were responsible for the care of Mr. Riley and who were negligent when rendering said care.

9. At all times relevant herein, L. Madison Michael, M.D. was, upon information and belief, employed as a physician with Semmes Murphey, P.C., hereinafter "Semmes Murphey." Dr. Michael provided services to Mr. Riley at Methodist Healthcare Memphis Hospitals, a/k/a Methodist University Hospital, hereinafter "Methodist", in providing surgical care to Christopher Riley. Dr. Michael was the supervising physician in charge of Mr. Riley's care. Dr. Michael also provided the direction that resulted in Mr. Riley's discharge.

10. Methodist is vicariously liable for the negligent acts of their employees, including but not limited to nursing personnel and surgical personnel while providing care to Christopher Riley from October 2, 2014 until October 9, 2014 and from October 13, 2014 until October 24, 2014, and at other times.

11. L. Madison Michael, M.D. is vicariously liable for the negligent acts of employees of Methodist, nursing personnel and surgical personnel while providing care to Christopher Riley on from October 2, 2014 until October 9, 2014 and from October 13, 2014 until October 24, 2014 and at other times who worked directly under his supervision.

12. Semmes Murphey is vicariously liable for the negligent acts of its employees, including but not limited to L. Michael Madison, M.D. while providing care to Christopher Riley from October 2, 2014 until October 9, 2014 and from October 13, 2014 until October 24, 2014, and at other times.

13. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

14. Venue is proper in the Western District of Tennessee under 28 U.S.C. § 1391.

III.

FACTS

15. On October 2, 2014, Christopher Riley was admitted to Methodist University Hospital, 1265 Union Avenue, Memphis, Shelby County, Tennessee for Dr. Madison to perform a biopsy on a small mass located on his pituitary gland. The mass was determined to be benign and Mr. Riley initially remained hospitalized until October 9, 2014.

16. At the time of discharge order by Dr. Michael, Mr. Riley had spinal fluid leaking from the drilled opening in his skull. In spite of the drainage, Mr. Riley was discharged and returned to his home.

17. Upon information and belief, employees of Methodist observed this leaking fluid and failed to take action to prevent Mr. Riley's discharge, including but not limited to reporting their concerns to their supervisors. The supervisors at Methodist, if advised of the concerns of their subordinates, failed to take action to remedy these concerns about Mr. Riley's discharge.

18. Furthermore, the records of Methodist are grossly deficient, such that there is an absence of records regarding Mr. Riley's wound care and any documentation of the status of leaking from the same.

19. After discharge, the leakage continued and Mrs. Riley contacted Dr. Michael's office to discuss her concerns. Mr. Riley was also suffering from an ongoing and continuous excruciating headache. She was advised to simply apply pressure to the hole in Mr. Riley's head.

20. On the night of October 12, 2014, Mr. Riley became incoherent and was rushed to the Emergency Department located at Baptist Hospital in Oxford, Mississippi. He was then transported by ambulance back to Methodist Hospital and was admitted to the intensive care unit.

21. It was determined that Mr. Riley had developed bacterial meningitis. After spending 12 days in the intensive care unit, Mr. Riley was again discharged on October 24, 2014.

22. After his discharge, he was treated by home health for an additional two weeks. During that time, he received intravenous antibiotics through a peripherally inserted central catheter (PICC) line to treat his bacterial meningitis.

23. Dr. Michael was negligent in discharging Mr. Riley on October 9, 2014 while fluid was still visibly leaking from the bored hole in his skull.

24. Methodist was negligent when, by and through the actions of its employees, for which it is vicariously liable, it failed to take the necessary steps to ensure that Mr. Riley was not discharged in the aforementioned state, particularly with fluid leaking from the bored hole in his skull.

25. Methodist was also negligent as a result of the unacceptable record keeping employed by its staff, including but not limited to its nursing staff, which resulted in the absence of recordation regarding Mr. Riley's wound care and any documentation of drainage (or the absence thereof) from the bored hole in his skull.

26. As a direct, proximate, factual, and legal result of the failures of Dr. Michael and Methodist referenced above, Mr. Riley contracted bacterial meningitis, which caused him to be re-admitted to the hospital, where he remained for an additional eleven (11) days. This failure also caused him to require home health care after his discharge. Mr. Riley also experienced and continues to experience negative impacts on his daily life, including but not limited to: headaches, a change in his personality, deficient memory, and other symptoms. Mr. Riley has also had his employment negatively impacted as a result of the continued symptoms he experiences.

IV.

CAUSE OF ACTION

COUNT 1

27.     On October 9, 2014, in the City of Memphis, Shelby County, Tennessee, or a similar community, the recognized standard of acceptable professional practice required Dr. Michael to not discharge Mr. Riley while he had fluid visibly leaking from the bored hole in his skull.  Dr. Michael fell below the recognized standard of acceptable professional practice at the time by discharging Mr. Riley even though he had fluid visibly leaking from the bored hole in his skull.

28.     As a direct, proximate, factual, and legal result of the failures of Dr. Michael referenced above, Mr. Riley contracted bacterial meningitis, which caused him to be re-admitted to the hospital, where he remained for an additional eleven (11) days.  This failure also caused him to require home health care after his discharge.  Mr. Riley also experienced and continues to experience negative impacts on his daily life, including but not limited to:  headaches, a change in his personality, deficient memory, and other symptoms.  Mr. Riley has also had his employment negatively impacted as a result of the continued symptoms he experiences.

COUNT 2

29.     Semmes Murphey, as the employer of L. Madison Michael, M.D., is vicariously liable for his negligence and/or gross negligence when his treatment fell below the standard of care required of him when treating Mr. Riley, as referenced *supra*.

30.     As a direct, proximate, factual, and legal result of the failures of Semmes Murphey's employee(s), referenced above, Mr. Riley contracted bacterial meningitis, which caused him to be re-admitted to the hospital, where he remained for an additional eleven (11)

days. This failure also caused him to require home health care after his discharge. Mr. Riley also experienced and continues to experience negative impacts on his daily life, including but not limited to: headaches, a change in his personality, deficient memory, and other symptoms. Mr. Riley has also had his employment negatively impacted as a result of the continued symptoms he experiences.

## COUNT 3

31. During October 2, 2014 and October 9, 2014, in the City of Memphis, Shelby County, Tennessee, or a similar community, the recognized standard of acceptable professional practice required the employees of Methodist to recognize that Mr. Riley was being discharged by Dr. Michael while fluid was visibly leaking from the bored hole in his skull. The recognized standard of acceptable professional practice required the employees to Methodist to recognize that Mr. Riley should not be discharged in his then-current stated and to report their opinions to their supervisors. The recognized standard of acceptable professional practice required the superiors of the reporting personnel to attempt to take action to ensure Mr. Riley was not discharged in his then-current state. Methodist, by and through the actions of its employees, fell below the recognized standard of acceptable professional practice at the time by failing to recognize the issues with Mr. Riley's imminent discharge and by failing to report these issues to their supervisors. Methodist further fell below the recognized standard of professional practice at the time by failing to take action to ensure Mr. Riley was not discharged in his then-current state.

32. As a direct, proximate, factual, and legal result of the failures of Methodist referenced above, Mr. Riley contracted bacterial meningitis, which caused him to be re-admitted to the hospital, where he remained for an additional eleven (11) days. This failure also caused

him to require home health care after his discharge. Mr. Riley also experienced and continues to experience negative impacts on his daily life, including but not limited to: headaches, a change in his personality, deficient memory, and other symptoms. Mr. Riley has also had his employment negatively impacted as a result of the continued symptoms he experiences.

COUNT 4

33. During October 2, 2014 and October 9, 2014, in City of Memphis, Shelby County, Tennessee, or a similar community, the recognized standard of acceptable professional practice required the supervising employees of Methodist to recognize that Mr. Riley was being discharged by Dr. Michael while fluid was visibly leaking from the bored hole in his skull. The recognized standard of acceptable professional practice required the supervising employees at Methodist to recognize that Mr. Riley should not be discharged in his then-current state and to attempt to address these concerns with Mr. Riley's treating physician. Methodist, by and through the actions of its supervising employees, fell below the recognized standard of acceptable professional practice at the time by failing to recognize the issues with Mr. Riley's imminent discharge and by failing to attempt to discuss these issues with Mr. Riley's supervising physician.

34. As a direct, proximate, factual, and legal result of the failures of Methodist referenced above, Mr. Riley contracted bacterial meningitis, which caused him to be re-admitted to the hospital, where he remained for an additional eleven (11) days. This failure also caused him to require home health care after his discharge. Mr. Riley also experienced and continues to experience negative impacts on his daily life, including but not limited to: headaches, a change in his personality, deficient memory, and other symptoms. Mr. Riley has also had his employment negatively impacted as a result of the continued symptoms he experiences.

COUNT 5

35. During October 2, 2014 and October 9, 2014, in the City of Memphis, Shelby County, Tennessee, or a similar community, the recognized standard of acceptable professional practice required the employees of Methodist to appropriately document their actions by using acceptable charting practices. The recognized standard of acceptable professional practice required the employees to chart their treatment of Mr. Riley's wound and to document any and all drainage (or lack thereof) occurring from his surgical wound. Methodist, by and through the actions of its employees, fell below the recognized standard of acceptable professional practice at the time by failing to use acceptable charting practices.

36. As a direct, proximate, factual, and legal result of the failures of Methodist referenced above, there is a complete absence of documentation in Mr. Riley's medical records regarding later treatment of his surgical wound. There is also an absence of documentation in Mr. Riley's medical records regarding drainage from Mr. Riley's surgical wound. This absence of appropriate record keeping has caused Mr. Riley's medical records to be deficient, to the extent that key pieces of evidence necessary for him to pursue the instant case are missing and/or compromised.

COUNT 6
*RES IPSA LOQUITUR*

37. On October 9, 2014, Mr. Riley was discharged while presenting symptoms. Discharge under these circumstances ordinarily would not occur in the absence of negligence. Mr. Riley was under the exclusive care and control of the Defendants at the time he was discharged. The Defendants failed to exercise due care to avoid injuring Mr. Riley by prematurely discharging him. The injury was not brought about by a cause other than the Defendants' negligence. As a result, Mr. Riley suffered and continues to suffer injury.

9

## COUNT 7

### GROSS NEGLIGENCE

38.     On and about October 9, 2014, Mr. Riley's condition (that fluid was leaking from the bored hole in his skull) was readily apparently and visible to any coming into contact with him.  It should have been known to the Defendants that Mr. Riley should not be discharged in the condition in which he was.  The Defendants ignored Mr. Riley's fluid leak, or failed to act in response to the same, and, as a result Mr. Riley contracted bacterial meningitis, which caused him to be re-admitted for medical treatment, to require home health treatment, and to suffer and continue to suffer adverse symptoms.  The Defendants' conduct, as alleged herein, was done with a reckless disregard for the consequences to Mr. Riley or an utter lack of concern for the safety of Mr. Riley, and as a direct, proximate, factual, and legal result, Mr. Riley was injured and continues to suffer injury.

## COUNT 8

### LOSS OF CONSORTIUM

39.     As a result of Mr. Riley's injury, Mrs. Riley has suffered damages as well.  She has been forced to provide care for her husband, the type of which she would not otherwise be required.  She has been forced to take on additional responsibilities around their home.  Mr. Riley has experienced an adverse impact to his employment; therefore, Mrs. Riley has been forced to become the sole provider for the Riley home.  Furthermore, she has not been able to receive the type and amount of companionship of her husband since the above referenced negligence occurred.  As a result of the Defendants' actions aforementioned, she has experienced loss of consortium and is entitled to recover for the same.

V.

## DAMAGES

40. As a direct, proximate, factual, and legal result of the acts of Defendants as alleged herein, the Plaintiffs have experienced the following:

A. Past, present, and future medical expenses necessitated by the injury;

B. Past, present, and future pain and suffering;

C. Past, present, and future severe emotional distress;

D. Past, present, and future lost wages;

E. Past, present, and future loss of consortium;

F. Any other element of damage to which the trier of fact believes the Plaintiff is entitled;

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray:

1. For a judgment against the Defendants in an amount necessary to compensate the Plaintiffs for the losses and elements of damages aforementioned, in an amount to be determined by the jury.

2. For a bifurcated proceeding at which time Plaintiff will put on evidence pursuant to T.P.I. Civil 14.55 – Punitive Damages and T.P.I. Civil – 14.56 Punitive Damages. Amount;

3. For a judgment against the Defendants for punitive damages in an amount to be determined by the jury;

4. For discretionary costs and attorney's fees; and

5. For court costs, for a jury trial, and for general relief.

This the 28th day of January, 2016.

*/s/ David E. Rozier, Jr.*
David E. Rozier, Jr. (BPR # 025863)
Jenessa Carter Hicks (BPR # 034048)
Rozier Law Firm, PLLC
2091 Old Taylor Road, Ste. 102
PO Box 2388

Oxford, MS  38655
Telephone:  662.234.0065
Facsimile:  662.234.3007


J. Wesley Hisaw (BPR # 024991)
Holland Law, P.C.
3010 Goodman Road West, Suite A
P.O. Box 256
Horn Lake, Mississippi 38637
Phone:  662-342-1333
Fax:     662-432-7321

*Attorneys for the Plaintiffs*