IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| CHRISTOPHER RILEY and LYNN RILEY, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | )   No. 16-02063 |
| METHODIST HEALTHCARE — MEMPHIS HOSPITALS, SEMMES MURPHEY CLINIC, P.C., L. MADISON MICHAEL, AND JOHN DOES 1-25, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

---

ORDER

---

Before the Court are Defendant Methodist Healthcare – Memphis Hospitals' ("Methodist") May 6, 2016 Motion to Dismiss (the "Motion to Dismiss")[1] and Defendants Semmes Murphey Clinic, P.C. ("Semmes Murphey") and L. Madison Michael's ("Dr. Michael") (collectively, "the Semmes Murphey Defendants") May 23, 2016 Motion for Judgment on the Pleadings (the "Motion for Judgment"), which incorporates the Motion to Dismiss. (MTD, ECF No. 17; Mot. for Judgment, ECF No. 29.) Plaintiffs Christopher

---

[1] The Motion to Dismiss was corrected on May 11, 2016. (MTD, ECF No. 22.)

Riley ("Mr. Riley") and Lynn Riley ("Mrs. Riley") responded to the Motion to Dismiss on May 13, 2016. (Resp. to MTD, ECF No. 24.) Methodist replied on May 27, 2016. (MTD Reply, ECF No. 32.) Plaintiffs responded to the Motion for Judgment on May 25, 2016, raising the arguments they made in their response to the Motion to Dismiss. (Resp. to Mot. for Judgment, ECF No. 30.) The Semmes Murphey Defendants replied on June 10, 2016, incorporating by reference Methodist's reply. (Mot. for Judgment Reply, ECF No. 37.) Also before the Court is the Semmes Murphey Defendants' May 9, 2016 Motion to Strike (the "Motion to Strike"). (Motion to Strike, ECF No. 18.) Plaintiffs responded on May 23, 2016. (Resp. to MTS, ECF No. 28.) The Semmes Murphey Defendants replied on June 8, 2016. (MTS Reply, ECF No. 35.)

For the following reasons, the Motion to Dismiss and the Motion for Judgment are GRANTED and the Motion to Strike is DENIED as moot.

## I.   Background

Mr. Riley was admitted to Methodist on October 2, 2014. (Compl., ECF No. 1 at ¶ 15.) Dr. Michael performed a biopsy on a small mass on Mr. Riley's pituitary gland. (Id.) Mr. Riley was discharged on October 9, 2014. (Id.) Plaintiffs allege that, when Mr. Riley was discharged, he had spinal fluid visibly leaking from the drilled opening in his skull. (Id. at ¶¶ 16,

2

23.)    Plaintiffs allege that Methodist employees were aware of the leak and failed to prevent Mr. Riley's discharge. (Id. at ¶¶ 16-17.)   Plaintiffs allege that, after Mr. Riley returned home, he suffered from an "excruciating" headache. (Id. at ¶ 19.)   Dr. Michael advised Mrs. Riley "to simply apply pressure to the hole in Mr. Riley's head." (Id.)   Plaintiffs allege that on October 12, 2014, Mr. Riley became incoherent and was admitted to the intensive care unit at Methodist. (Id. at ¶ 20.)   Mr. Riley had developed bacterial meningitis. (Id. at ¶¶ 20-21.)   Mr. Riley was discharged on October 24, 2014, and received in-home care for two weeks. (Id. at ¶¶ 21-22.)

On September 30, 2015, Plaintiffs mailed pre-suit notice (the "Notice Letter") to Defendants pursuant to Tenn. Code Ann. § 29-26-121.[2]   (Notice Letter, ECF No. 1-1.)   Methodist, Semmes Murphey, and Dr. Michael were named as the three provider defendants receiving notice. (Id.)   The copy of the Notice Letter that was mailed to Methodist was mailed only to its agent for service of process, not to its business address. (Id.)   Although the Notice Letter provided that "a total of three (3) forms [were] enclosed for each provider, which should include a release for each individual being sent a notice to receive any

---

[2] The Notice Letter is attached to the Complaint and incorporated by reference. (Notice Letter, ECF No. 1-1; Compl., ECF No. 1 at ¶ 1.)   The Court may consider it when deciding the Motion to Dismiss and the Motion for Judgment.   Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 325, 335-36 (6th Cir. 2007).   Each Defendant received the same copy of the Notice Letter and the HIPAA authorization forms.

records which any provider may have," only two HIPAA authorization forms (the "HIPAA Authorizations") were enclosed. (Id. at 9-15.)   The HIPAA Authorizations included one form authorizing Methodist to release Mr. Riley's medical records, and one form authorizing Semmes Murphey to release Mr. Riley's medical records.   (Id.)   No form was included authorizing Dr. Michael to release Mr. Riley's records.   The HIPAA Authorizations provided a space for Plaintiffs to designate to whom Methodist and Semmes Murphey could release Mr. Riley's records.   Plaintiffs left that space blank on both forms.   (Id. at 13, 15.)   Plaintiffs' address was included on the HIPAA Authorizations.   It was not included in the Notice Letter.

Plaintiffs filed the Complaint on January 28, 2016, alleging negligence, gross negligence, and loss of consortium. (Compl., ECF No. 1 at ¶¶ 27-39.)   Plaintiffs seek compensatory damages, punitive damages, costs, and attorney's fees.   (Id. at ¶ 40.)

## II.  Standard of Review

### A. Motion to Dismiss

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523,

4

527 (6th Cir. 2007).   A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).

This standard requires more than bare assertions of legal conclusions.   Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).   "[A] formulaic recitation of the elements of a cause of action will not do."   Twombly, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Id. at 1949 (citation omitted).   A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery."   Id. at 1950.

**B. Motion for Judgment**

The standard of review governing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as the standard for a motion to dismiss under Rule

12(b)(6).   Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009).   "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."   JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007).

### C. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   "[T]he action of striking a pleading should be sparingly used by the courts."   Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953).   "It is a drastic remedy to be resorted to only when required for the purposes of justice."   Id.   "The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."   Id.

### III. Jurisdiction and Choice of Law

Under 28 U.S.C. § 1332(a), this Court has original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."   28 U.S.C. § 1332(a)(1).   The court must disregard John Doe defendants when determining whether complete diversity exists between the

identified parties.  _Curry v. U.S. Bulk Transp., Inc._, 462 F.3d 536, 539 (6th Cir. 2006).

Plaintiffs are citizens of Mississippi.  (Compl., ECF No. 1 at ¶¶ 3-4.)  Defendant Methodist is a Tennessee corporation with its principal place of business in Tennessee. (_Id._ at ¶ 5.) Defendant Dr. Michael is a citizen of Tennessee. (_Id._ at ¶ 6.) Defendant Semmes Murphey is a Tennessee corporation with its principal place of business in Tennessee. (_Id._ at ¶ 7.) Plaintiffs seek damages in excess of $75,000. (Discovery Resp., ECF No. 43 at 9.)  The parties are completely diverse, and the amount-in-controversy requirement is satisfied.

In a diversity action, state substantive law governs.  _See Brocklehurst v. PPG Indus., Inc._, 123 F.3d 890, 894 (6th Cir. 1997) (citing _Erie R.R. Co. v. Tompkins_, 304 U.S. 64, 78 (1938)).  Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a "choice of law" analysis _sua sponte_.  _See GBJ Corp. v. E. Ohio Paving Co._, 139 F.3d 1080, 1085 (6th Cir. 1998).  Tennessee substantive law applies.

**IV.  Analysis**

**A.   Motion to Dismiss**

Methodist argues that Plaintiffs failed to comply with the pre-suit notice provisions of the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-121 (the "THCLA"). (MTD,

7

ECF No. 22-1.)   Tenn. Code Ann. § 29-26-121(a)(1) "requires plaintiffs to give defendants written notice that a potential healthcare liability claim may be forthcoming" at least sixty days before the complaint is filed. Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 555 (Tenn. 2013); Tenn. Code Ann. § 29-26-121(a)(1).   The pre-suit notice must include:

> (A) The full name and date of birth of the patient whose treatment is at issue;
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
> (C) The name and address of the attorney sending the notice, if applicable;
> (D) A list of the name and address of all providers being sent a notice; and
> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. §§ 29-26-121(a)(2)(A)-(E).

Requirements (A), (B), and (C) "facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney."   Stevens, 418 S.W.3d at 554.   Requirements (D) and (E) "serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records."   Id.

In addition to these pre-suit notice content requirements, the statute imposes requirements for the delivery of notice to defendants and for affidavits establishing the delivery of notice. See Tenn. Code Ann. §§ 29-26-121(a)(2)-(4). "The content and affidavit requirements of Tennessee Code Annotated sections 29-26-121(a)(2), (a)(3), and (a)(4) are not mandatory, but directory, and can be achieved through substantial compliance." Arden v. Kozawa, 466 S.W.3d 758, 763 (Tenn. 2015). "[U]nless strict compliance with a notice content requirement is essential to avoid prejudicing an opposing litigant, substantial compliance with a content requirement will suffice." Id. (internal quotation marks omitted). To determine whether the plaintiff substantially complied with the THCLA pre-suit notice requirements, courts "consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." Stevens, 418 S.W.3d at 555.

If the plaintiff fails to comply with the pre-suit notice requirements, courts may excuse the failure "only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b). "Extraordinary cause" has been interpreted as an excuse that is "unusual" or "exceptional," such as an illness or a death in the family. Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 311 (Tenn. 2012). If the plaintiff complies with the requirements, "the

applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." Tenn. Code Ann. § 29-26-121(c).

Methodist contends that the Notice Letter was deficient because: 1) it was not mailed to Methodist's business address as required under Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii), 2) it did not provide the address of the claimant authorizing notice as required under Tenn. Code Ann. § 29-26-121(a)(2)(B), 3) it did not include HIPAA compliant authorizations allowing all providers "receiving the notice to obtain complete medical records from each other provider being sent a notice" as required under Tenn. Code Ann. § 29-26-121(a)(2)(E), and 4) the section of the HIPAA Authorizations providing the person entitled to receive the medical records from the provider was blank, in violation of Tenn. Code Ann. § 29-26-121(a)(2)(E) and 45 C.F.R. 164.508(c)(1)(iii). (MTD, ECF No. 22-1 at 2.) Methodist argues that, because Plaintiffs failed to comply with Tenn. Code Ann. § 29-26-121(a), their claims are time barred. (Id. at 20.)

### 1. Service to Methodist's Business Address

Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii) requires pre-suit notice to be mailed to a corporation or other business entity at "both the address for the agent for service of process, and the

provider's current business address, if different from that of the agent for service of process." Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii).   The Notice Letter was mailed only to Methodist's agent for service of process. (Notice Letter, ECF No. 1-1 at 1.)   Mailing the Notice Letter to the agent put Methodist on notice of the claim.  Methodist has not argued that it was prejudiced.  It argues only that the failure to mail the Notice Letter to its business address "demonstrates Plaintiffs' pattern of noncompliance with the statutory provisions of the THCLA."  (MTD, ECF No. 22-1 at 10.)  Plaintiffs substantially complied with Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii).  That requirement was satisfied.

### 2. Address of Claimant Authorizing Notice

Although the Notice Letter did not include the address of the claimant authorizing notice, which would have been Plaintiffs' address, the HIPAA Authorizations did include their address. (Notice Letter, ECF No. 1-1 at 12, 14.)  The purpose of Tenn. Code Ann. § 29-26-121(a)(2)(B) is to give defendants notice of a possible claim and who is involved.  Myers, 382 S.W.3d at 309-10.  Methodist has not claimed any prejudice because Plaintiffs included their address in the HIPAA Authorizations rather than in the Notice Letter.  Methodist could determine Plaintiffs' address from the materials it received.  Plaintiffs substantially complied with Tenn. Code

Ann. § 29-26-121(a)(2)(B).  That requirement was satisfied.

### 3. HIPAA Authorizations

Methodist argues that the HIPAA Authorizations did not comply with Tenn. Code Ann. § 29-26-121(a)(2)(E) because the section providing the person entitled to receive Mr. Riley's medical records was blank on both forms and there was no authorization for the use or disclosure of medical records held by Dr. Michael.  (MTD, ECF No. 22-1.)

Under Tenn. Code Ann. § 29-26-121(a)(2)(E), pre-suit notice must include a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."  Tenn. Code Ann. § 29-26-121(a)(2)(E).  A HIPAA authorization must include the following six elements:

> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
> (iv) A description of each purpose of the requested use or disclosure . . . .
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure . . . .
> (vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

12

45 C.F.R. § 164.508(c)(1); <u>Stevens</u>, 418 S.W.3d at 555-56.

"Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records." <u>Stevens</u>, 418 S.W.3d at 555.

There is no dispute between the parties that Plaintiffs left blank the section of the HIPAA Authorizations providing for "the name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure". (Notice Letter, ECF No. 1-1 at 13, 15); 45 C.F.R. § 164.508(c)(1)(iii). No authorization was included at all for records held by Dr. Michael.

Plaintiffs offer several arguments that, despite these deficiencies, there was substantial compliance. They argue that the Notice Letter should be read in conjunction with the HIPAA Authorizations to allow each Defendant to disclose and obtain all of Mr. Riley's medical records held by the other Defendants. (Resp. to MTD, ECF No. 24 at 7-8.) Plaintiffs argue that, according to the United States Department of Health and Human Services ("HHS") website, cover letters can be used to provide specifics about requests for health information. (<u>Id.</u> at 7.) Plaintiffs argue that the Notice Letter states that the releases were provided for the purpose of disclosure and can be used to

supplement the HIPAA Authorizations. (Id. at 7-8.) Methodist responds that the "Frequently Asked Questions" section of the HHS website is not legal authority establishing what is sufficient to comply with the requirements of Tenn. Code Ann. § 29-26-1219(a)(2)(E). (MTD Reply, ECF No. 32 at 4.)

Even if the Court were to consider the HHS website, the page cited by Plaintiffs provides that cover letters can be used only to narrow a request, not expand it. Health Information Privacy, United States Department of Health & Human Services, http://www.hhs.gov/ocr/privacy/hipaa/faq/authorizations/479.html (last visited September 22, 2016). A Tennessee court has opined that a cover letter may be used to cure a blank portion of a HIPAA authorization form only if the letter "explicitly authorizes [the defendant] to make any additions or changes to the authorization." Bray v. Khuri, No. W2015-00397-COA-R3-CV, 2015 WL 7775316, at *4 (Tenn. Ct. App. Dec. 3, 2015). The Notice Letter did not give Methodist or the Semmes Murphey Defendants explicit authority to make additions or changes to the HIPAA Authorizations.

Plaintiffs argue that there has been substantial compliance because the recipient section of the HIPAA Authorizations was left blank purposefully so Defendants could specify the employee to whom the records should be sent. (Resp. to MTD, ECF No. 24 at 9.) Plaintiffs also contend that Methodist's arguments are

14

disingenuous because it failed to inform Plaintiffs of any potential deficiencies with the Notice Letter or HIPAA Authorizations and there is no evidence that Methodist or the Semmes Murphey Defendants tried to use the provided authorizations to obtain Mr. Riley's records. (Id. at 11-13.)

The Tennessee Supreme Court has rejected the proposition that plaintiffs should leave HIPAA authorization forms blank for defendants to complete because plaintiffs, not defendants, are responsible for complying with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).   Stevens, 418 S.W.3d at 559.   A Tennessee court has rejected a plaintiff's argument that leaving an authorization form blank was excused because plaintiff anticipated that the defendant would fill in the name of the persons or class of persons to whom the disclosures might be made.   Roberts v. Prill, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *6 (Tenn. Ct. App. June 26, 2014).   The Roberts court opined that the plaintiff was "essentially argu[ing] that the onus should be placed on Defendants to test the sufficiency of the form or even to complete an inadequate form," but the court explained that such an argument was rejected in Stevens when the Tennessee Supreme Court held that the burden is on the plaintiff to comply with the THCLA pre-suit notice requirements. Id. (citing Stevens, 418 S.W.3d at 559).

Courts have found HIPAA authorization forms with blank

15

spaces to be substantially compliant with pre-suit notice requirements when the blank amounted to a "minor omission," such as a blank date line. Hamilton v. Abercrombie Radiological Consultants, Inc., 487 S.W.3d 114, 122 (Tenn. Ct. App. 2014). Here, the HIPAA Authorizations left blank "the name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure". 45 C.F.R. § 164.508(c)(1)(iii). The blank space is more than a "minor omission" because Defendants were not authorized to disclose records to one another. Roberts, 2014 WL 2921930, at *5. No Defendant was required to test the sufficiency of the HIPAA Authorizations or to notify Plaintiffs of deficiencies. See Stevens, 418 S.W.3d at 559. The Tennessee Supreme Court has observed that health care providers can face "extremely severe" penalties for wrongfully disclosing or obtaining private health information in violation of HIPAA. Id. at 555 n.6.

Plaintiffs' reliance on an order from the Northern District of California that required plaintiffs in a multi-district litigation to provide defendants with blank medical authorization forms is not persuasive. (Resp. to MTD, ECF No. 24 at 15 (citing Pretrial Order No. 6, In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig., No. 3:05-md-01699-CRB, ECF No. 178 at 3 (N.D. Cal. Feb. 13, 2006)).) That case

included product liability lawsuits by thousands of plaintiffs against a pharmaceutical company.  The court ordered plaintiffs to submit HIPAA authorization forms with the names of medical providers they had used left blank for purposes of coordinating discovery.  There was no discussion about whether the blank spaces affected HIPAA compliance or whether the spaces would be filled in later as the defendant wished to obtain records.  The submission of forms was not ordered in the context of the THCLA or any similar pre-notice requirement statute.  The court's ordering the submission of blank forms has no bearing on Tennessee courts' decisions about what constitutes substantial compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E).

Plaintiffs argue that Methodist was not prejudiced by the deficiencies in the HIPAA Authorizations because it could have used and disclosed Mr. Riley's records for litigation purposes under 45 C.F.R. §§ 164.502(a), 164.506(a), and 164.512(e). (Resp. to MTD, ECF No. 24 at 10-11.)  Although those federal regulations allow the disclosure of certain medical information during litigation, they do not excuse a plaintiff from complying with Tenn. Code Ann. § 29-26-121(a)(2)(E).  The purpose of that statute is to "equip[] defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling <u>early</u> discovery . . . and <u>early</u> access to a plaintiff's medical records."  <u>Stevens</u>, 418 S.W.3d at 554 (emphasis added).

That purpose is frustrated if defendants cannot access necessary records until litigation has begun.   Excusing compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) based on the federal regulations would obviate the need for pre-suit notice.

Plaintiffs also argue that Methodist was not prejudiced by deficiencies in the HIPAA Authorizations because Methodist "is probably the only entity with actual records related to the malpractice" and, "[a]s a result, all records would be at Methodist." (Resp. to MTD, ECF No. 24 at 8-9.)   That argument is not well-taken because Plaintiffs speculate in their response that Methodist "probably" has the records it needs to mount a defense.   The burden is on the plaintiff to ensure that each provider defendant has the ability to access relevant medical records held by all other provider defendants.   Stevens, 418 S.W.3d at 559.

Even if it were true that Methodist possessed all relevant medical records and would not be prejudiced, the HIPAA Authorizations would fail to comply with Tenn. Code Ann. § 29-26-121(a)(2)(E).   Methodist is not authorized to disclose its records to the Semmes Murphey Defendants.   The Semmes Murphey Defendants could not request medical records from Methodist. The authorization section providing the person to whom Methodist could disclose records is blank.   The statute explicitly provides that the authorization must permit each provider "to

obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E) (emphasis added).

There is not substantial compliance where the HIPAA authorization does not allow each provider to obtain records from all other providers. Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice."). This case is distinguishable from cases in which a HIPAA authorization form with missing information constituted substantial compliance because there was only one provider defendant or because the provider defendant conceded that it knew no other provider possessed relevant medical records. Hargrow v. Shelby Cnty., No. 13-2770, 2014 WL 3891651 (W.D. Tenn. Aug. 7, 2014); Hughes v. Henry Cnty. Medical Ctr., No. W2014-01973-COA-R3-CV, 2015 WL 3562733 (Tenn. Ct. App. June 9, 2015).

Plaintiffs have failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E). The Court cannot excuse Plaintiff's non-compliance because they have failed to show the "extraordinary cause" required by Tenn. Code Ann. § 29-26-121(b).

### 4. Statute of Limitations

"The statute of limitations in health care liability

actions shall be one (1) year as set forth in § 28-3-104."
Tenn. Code Ann. § 29-26-116(a)(1).  That time period may be
extended by 120 days only if the plaintiff complies with the
pre-suit notice requirements in Tenn. Code Ann. § 29-26-
121(a)(2).  Tenn. Code Ann. § 29-26-121(c).  Plaintiffs have not
complied.  The one-year limitation controls.

"As a general rule, a cause of action for an injury accrues
when the injury occurs . . . an injury being understood as any
wrong or damage done to another's person, rights, reputation, or
property." Cherry v. Williams, 36 S.W.3d 78, 83 (Tenn. Ct. App.
2000) (internal quotation marks omitted).  The latest date the
Court could reasonably find that Plaintiffs' injury accrued is
October 12, 2014, when Mr. Riley returned to Methodist as a
result of the leak from his skull and was diagnosed with
bacterial meningitis.  (Compl., ECF No. 1 at ¶¶ 20-21.)  The
Complaint was filed on January 28, 2016, more than one year
after that date.  (Compl., ECF No. 1.)  Plaintiffs' claims
against Methodist are time-barred.  The Motion to Dismiss is
GRANTED.

**B. Motion for Judgment**

The Motion for Judgment incorporates the Motion to Dismiss.
(Mot. for Judgment, ECF No. 29 at 4.)  Plaintiffs failed to
substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E)
because the HIPAA Authorizations did not allow each provider

defendant to use or disclose the medical records held by all other provider defendants.[3]   The one-year statute of limitations applies to the claims against the Semmes Murphey Defendants. The Complaint was filed on January 28, 2016, more than one year after the latest date that Mr. Riley's injury could have accrued, October 12, 2014.   Plaintiffs' claims against the Semmes Murphey Defendants are time-barred.   The Motion for Judgment is GRANTED.

### C. Motion to Strike

The Semmes Murphey Defendants move to strike Plaintiffs' request for attorney's fees.   Plaintiffs' claims have been dismissed.  The Motion to Strike is DENIED as moot.

## V.   Conclusion

For the foregoing reasons, the Motion to Dismiss and the Motion for Judgment are GRANTED.   The Motion to Strike is DENIED as moot.

So ordered this 22d day of September, 2016.

---

[3] The Semmes Murphey Defendants say they were prejudiced only by the HIPAA Authorizations' blank recipient sections, not by Plaintiffs' failure to include an authorization form for records held by Dr. Michael.  That is not dispositive here.  Methodist was prejudiced by the failure to include an authorization form for records held by Dr. Michael, and the blank recipient sections alone are sufficient to find that there was not substantial compliance because Methodist and the Semmes Murphey Defendants could not disclose records to each other.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE