IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CHRISTOPHER RILEY and LYNN        )
RILEY,                            )
                                  )
                                  )
     Plaintiffs,                  )
                                  )
v.                                )        No. 16-02063
                                  )
METHODIST HEALTHCARE — MEMPHIS    )
HOSPITALS, SEMMES                 )
MURPHEY CLINIC, P.C.,             )
L. MADISON MICHAEL,               )
AND JOHN DOES 1-25,               )
                                  )
                                  )
     Defendants.                  )
                                  )
                                  )

ORDER

Before the Court is Plaintiff Christopher Riley ("Mr. Riley") and Plaintiff Lynn Riley's ("Mrs. Riley") October 18, 2016 F.R.C.P. 59(e) Motion to Alter or Amend Judgment or F.R.C.P. 60(b) Motion for Relief from a Judgment or Order (the "Motion to Alter or Amend").   (ECF No. 57 at PageID 340.) Defendant Methodist Healthcare — Memphis Hospitals ("Methodist") responded on November 1, 2016.   (ECF No. 58 at PageID 435.) Defendants Semmes Murphey Clinic, PC ("Semmes Murphey") and L. Madison Michael, MD ("Dr. Michael") (collectively, the "Semmes

Murphey Defendants") responded on November 1, 2016, adopting by reference Methodist's response to the Motion.  (ECF No. 59 at PageID 457.)

For the following reasons, the Motion to Alter or Amend is DENIED.

## I.   Background

On January 28, 2016, Plaintiffs filed this action against Defendants alleging negligence, gross negligence, and loss of consortium based on medical treatment Christopher Riley received at Methodist on October 2, 2014, and care provided afterward. (ECF No. 1 ¶ 3, 15, 27-39 at PageID 2, 4, 6-10.)

On May 6, 2016, Methodist moved to dismiss the action under Rule 12(b)(6)[1] for failure to state a claim upon which relief can be granted (the "Motion to Dismiss").  (ECF No. 17 at PageID 50.)  Plaintiffs responded to the Motion to Dismiss on May 13, 2016 (the "MTD Response").  (ECF No. 24 at PageID 136.)  On May 23, 2016, the Semmes Murphey Defendants moved for judgment on the pleadings (the "Motion for Judgment"), adopting by reference the Motion to Dismiss.  (ECF No. 29 at PageID 175-76.) Plaintiffs responded to the Motion for Judgment on May 25, 2016, raising the same arguments they made in their MTD Response. (ECF No. 30 at PageID 180.)

---

[1] Unless otherwise noted, references to "Rule __" are to the Federal Rules of Civil Procedure.

On September 22, 2016, the Court granted the Motion to Dismiss and the Motion for Judgment (the "Dismissal Order"). (ECF No. 55 at PageID 317-18.) The Court ruled that Plaintiffs had failed to substantially comply with the pre-suit notice provisions of the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-121 (the "THCLA"), specifically the requirement that "[a]ny person . . . asserting a potential claim for health care liability . . . give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint" that includes a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. §§ 29-26-121(a)(1) and (a)(2)(E). (ECF No. 55 at PageID 324-35.)

The Court found that "[t]here [was] no dispute between the parties that Plaintiffs left blank the section of the HIPAA Authorizations providing for 'the name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure,'" and that "[n]o authorization was included at all for records held by Dr. Michael." (Id. at PageID 329 (quoting 45 C.F.R. § 164.508(c)(1)(iii)).) The Court found that Plaintiffs had failed to substantially comply with § 29-26-121(a)(2)(E)'s

HIPAA-authorization requirement.  (Id. at PageID 335.)  The Court decided that it could not excuse Plaintiffs' noncompliance "because they . . . failed to show the 'extraordinary cause' required by Tenn. Code Ann. § 29-26-121(b)."  (Id.)  Because Plaintiffs filed their action after the one-year statute-of-limitations period for their action had run and the running of that period had not been tolled, the Court also decided that Plaintiffs' action was time-barred.  (Id. at PageID 335-36.)  The Court entered judgment on September 22, 2016, dismissing the action with prejudice (the "Judgment").  (ECF No. 56 at PageID 339.)

Plaintiffs now move the Court to alter, amend, set aside, or otherwise grant them relief from the Judgment and to reinstate the action.

## II.  Standard of Review

Within 28 days after the entry of judgment, a party may file a motion to alter or amend the judgment.  See Fed. R. Civ. P. 59(e).  "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent a manifest injustice."  Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005).  "The purpose of Rule 59(e) is 'to allow the district court to correct its own errors, sparing the parties and appellate courts the

burden of unnecessary appellate proceedings.'"  Howard v. United States, 533 F.3d 472, 475 (6th Cir. 2008) (quoting York v. Tate, 858 F.2d 322, 326 (6th Cir. 1988)).  However, "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment."  Id.  "Rule 59(e) allows for reconsideration; it does not permit parties to effectively re-argue a case."  Id. (quotation marks omitted).  Whether to grant a Rule 59(e) motion is within the district court's informed discretion.  Betts v. Costco Wholesale Corp., 558 F.3d 461, 467 (6th Cir. 2009).

Under Rule 60(b)(6), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for one of several specified reasons, including "any other reason that justifies relief." Rule 60(b)(6) "is a catchall provision that provides for relief from a final judgment for any reason justifying relief not captured in the other provisions of Rule 60(b)."  West v. Carpenter, 790 F.3d 693, 696 (6th Cir. 2015).  "Rule 60(b)(6) applies only in exceptional or extraordinary circumstances where principles of equity mandate relief."  Id. at 696-97.  "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof."  Jinks v. AlliedSignal, Inc., 250 F.3d 381, 385 (6th Cir. 2001).  "[T]he party seeking

relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." Info-Hold, Inc. v. Sound Merch., Inc., 538 F.3d 448, 454 (6th Cir. 2008). In deciding a motion under Rule 60(b)(6), a district court's discretion is "especially broad." West, 790 F.3d at 697.

## III. Analysis

Plaintiffs argue that (A) the "Court's ruling is contrary to holdings of the most relevant and factually similar cases which have previously been considered by Tennessee appellate courts" addressing whether a HIPPA authorization substantially complies with the THCLA's pre-suit notice requirements. Plaintiffs also argue that the Court erred in its substantial-compliance determination by (B) misapplying HIPAA guidance provided by the U.S. Department of Health and Human Services ("HHS") and (C) relying on a decision by the Tennessee Court of Appeals in Bray v. Khuri, No. W2015-00397-COA-R3-CV, 2015 WL 7775316 (Tenn. Ct. App. Dec. 3, 2015), a case that is now under review by the Tennessee Supreme Court. Plaintiffs argue that (D) the "Court has not considered one-half of the required analysis when it failed to require that the Defendants prove they suffered prejudice as a result of any alleged deficiencies in the HIPAA release provided by the Plaintiffs." Plaintiffs argue that the Court erred by (E) finding that the statute of

6

limitations had run, making this action time-barred.  (ECF No. 57-1 at PageID 342, 350, 358-60.)

### A.    Substantial-Compliance Determination

Plaintiffs offer several arguments that the Court's substantial-compliance determination conflicts with Tennessee authority addressing the THCLA's pre-suit notice requirements governing HIPAA authorizations.  First, Plaintiffs contend that "[t]here is nothing in Tennessee law that requires a plaintiff [to] take affirmative steps to inquire of a defendant pre-suit who will act as their representative . . . for receipt purposes."  (Id. at PageID 350-51.)  Plaintiffs contend that a provider-defendant might want "the records sent to [its] attorney or insurance carrier for purposes of review of the same with an eye towards the merits of the case."  (Id. at PageID 351.)  Plaintiffs argue, "Yet, this Court holds that the Plaintiffs must complete fully the name, representative capacity, and address of the person within the [provider-d]efendants' organizations to receive the records."  (Id.)

Plaintiffs misperceive Tennessee law and the Court's application of Tennessee law.  In the Dismissal Order, the Court noted that, in general, a HIPAA authorization must include the "name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure."  (ECF No. 55 at PageID 328

(quoting 45 C.F.R. § 164.508(c)(1)(iii)).)  The Court noted that, under the THCLA, plaintiffs must give provider-defendants pre-suit notice that includes "[a] HIPPA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."  (Id. at PageID 324 (quoting Tenn. Code Ann. § 29-26-121(a)(2)(E)).)  The Court explained that the "purpose of that statute is to 'equip[] defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling *early* discovery . . . and *early* access to a plaintiff's medical records.'"  (Id. at PageID 333 (alterations in original) (quoting Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 554 (Tenn. 2013)).)[2]  The Court held that the blank spaces in Plaintiffs' HIPAA Authorizations, where Plaintiffs were to list the persons to whom each provider could disclose Mr. Riley's records, were more than minor omissions because Defendants were not authorized to disclose records to one another.  (Id. at PageID 332 (citing 45 C.F.R. § 164.508(c)(1)(iii); Roberts v. Prill, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, at *5 (Tenn. Ct. App. June 26, 2014)).)

---

[2] Plaintiffs argue that the purpose of the THCLA is to give provider-defendants notice of a forthcoming lawsuit and that the HIPAA authorizations they sent Defendants, even if defective, met that purpose.  (ECF No. 57-1 at PageID 356-57.)  Although the THCLA may serve a notice function generally, Stevens makes clear that the specific "purpose of Tenn. Code Ann. § 29-26-121(a)(2)(E) *is not* to provide defendants with notice of a potential claim," but to serve an investigatory function, as discussed in the Dismissal Order. 418 S.W.3d at 555 (emphasis added).

Plaintiffs are correct that Tennessee law does not require a plaintiff to take affirmative steps pre-suit to ask a provider-defendant whether it wants permission to share records with *other individuals*, such as the provider-defendant's attorney or insurance carrier. As the Dismissal Order recognizes, however, Tennessee law *does* require that HIPAA authorizations at least permit *each provider* to share all medical records with one another, which Plaintiffs' Authorizations did not.

Plaintiffs argue that, because the facts of this case are less like the facts in <u>Stevens</u>, where the HIPAA authorization was *not* held to be substantially compliant with § 29-26-121(a)(2)(E), and more like the facts in <u>Hamilton v. Abercrombie Radiological Consultants, Inc.</u>, 487 S.W.3d 114 (Tenn. Ct. App. 2014), where the HIPAA authorizations *were* held to be substantially compliant, the Court should have held that Plaintiffs' HIPAA Authorizations were substantially compliant. (ECF No. 57-1 at PageID 351-54.)

In <u>Stevens</u>, although the HIPAA authorization the plaintiff sent the provider-defendants "permitted the release of . . . medical records to [p]laintiff's counsel," the "authorization failed to authorize each medical provider receiving the notice to obtain [the] records from each other." 418 S.W.3d at 552. The "authorization also failed to provide

[the decedent's] name, date of birth, the individuals or organizations authorized to disclose medical records, and the type of information to be used or disclosed." Id.

The Stevens court explained that, "[i]n determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." Id. at 556. Addressing § 29-16-121(a)(2)(E) specifically, the court explained that, "[b]ecause HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." Id. at 555.

The Stevens court gave two reasons that the plaintiff's HIPAA authorization did not substantially comply with § 29-16-121(a)(2)(E). One was that "[p]laintiff's medical authorization failed to satisfy at least three of the six compliance requirements mandated by HIPAA." Id. at 556. The other, and "most important[]," was that, "by permitting disclosure only to [p]laintiff's counsel, [p]laintiff's medical authorization failed to satisfy the express requirement of Tenn. Code Ann. § 29-26-121(a)(2)(E) that a plaintiff's medical authorization

10

permit the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Id. (alterations and quotation marks omitted). The court concluded that, "[d]ue to [p]laintiff's material non-compliance, [d]efendants were not authorized to receive any of the [p]laintiff's records." Id.

In contrast, in Hamilton, the sole omission in the HIPAA authorizations sent to each provider-defendant was an open date line in the form. 487 S.W.3d at 116. The Hamilton court "concluded that the relatively minor shortcoming in the HIPAA form . . . [was] not fatal to [plaintiff's] cause of action" and that plaintiff had substantially complied with § 29-26-121(a)(2)(E). Id. at 122.

Hamilton discussed several Tennessee decisions applying § 29-26-121(a)(2)(E). The court explained that, in Stevens, "[t]he form provided by plaintiff was deficient because it failed to permit 'the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.'" Id. at 119 (quoting Tenn. Code Ann. § 29-26-121(a)(2)(E)). The court explained that, in Hargrow v. Shelby County, No. 13-2770, 2014 WL 3891651 (W.D. Tenn. Aug. 7, 2014), where the authorization form was held to be substantially compliant, "the defendant was able to obtain the medical records, which is the essence of the thing to be accomplished by

the federal criteria concerning the validity of the HIPAA authorization." Id. at 120 (quotation marks omitted). The court explained that, in Roberts, where the authorization form was not held to be substantially compliant, "the plaintiff failed to specifically identify 'the person(s) or class of persons authorized to make the requested use or disclosure' and 'the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure,'" and the authorization form "only permitted the use or disclosure of the medical records to plaintiff's counsel." Id. at 122. Hamilton emphasizes that the key consideration in assessing whether a HIPAA authorization substantially complies with § 29-26-121(a)(2)(E) is whether it properly permits the providers to share medical records with one another. See id. ("While the release had an open date line, it allowed disclosure to the [defendants], which is a critical distinction between this case and Roberts.").

The Dismissal Order is consistent with Stevens, Hamilton, and the decisions Hamilton discusses. The material omissions in Plaintiffs' Authorizations, not to mention Plaintiffs' failure to include an Authorization for Defendant Dr. Michael entirely, prevented Defendants from sharing all of Mr. Riley's records with one another. (ECF No. 55 at PageID 329, 332, 334-35, 337 n.3.) Because of those material omissions, Plaintiffs'

Authorizations did not substantially comply with § 29-26-121(a)(2)(E).

Plaintiffs argue that the HIPAA authorization in <u>Stevens</u>, which was not substantially compliant, had six omissions, but the HIPAA authorizations in <u>Hamilton</u>, which were substantially compliant, had only one omission. Plaintiffs argue that, because their HIPAA Authorizations suffer from a single omission, those Authorizations should be considered substantially compliant, as in <u>Hamilton</u>. (ECF No. 57-1 at PageID 351-53.)

That argument assumes that, in determining whether a HIPAA authorization is substantially compliant with § 29-26-121(a)(2)(E), the total number of omissions is dispositive. <u>Stevens</u> instructs that a "court should consider the ***extent and significance*** of the plaintiff's errors and omissions" in assessing substantial compliance, not merely the quantity. 418 S.W.3d at 556 (emphasis added). The "errors and omissions" in <u>Stevens</u> were both "numerous ***and significant***." <u>Id.</u> (emphasis added). "[M]ost important[]" was that the HIPAA authorization "failed to . . . permit the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." <u>Id.</u> (alterations and quotation marks omitted). Where the omissions prevent provider-defendants from obtaining

complete records from one another, an authorization does not substantially comply with § 29-26-121(a)(2)(E).

Plaintiffs also argue that, just as the Hamilton plaintiff asserted that she had left the date line open in her HIPAA authorizations as a courtesy so that the defendants could fill in that blank at their convenience, see Hamilton, 487 S.W.3d at 116, 120, so also the omission in their Authorizations was "not an omission at all, [but] rather . . . an effort to be abundantly accommodating to the Defendants." (ECF No. 57-1 at PageID 351, 353.)   Although Hamilton noted plaintiff's accommodation argument, it did not factor that argument into its substantial-compliance analysis.   See Hamilton, 487 S.W.3d at 121-22.   Roberts explicitly rejected such an argument.   2014 WL 2921930, at *5-6.

The substantial-compliance analysis in the Dismissal Order was consistent with, not contrary to, the Tennessee authorities Plaintiffs cite.

### B.   HHS HIPAA Guidance and Cover Letters

Plaintiffs argue that the Court erred in its substantial-compliance determination by misapplying HIPAA guidance provided by HHS.   (ECF No. 57-1 at PageID 358-59.)   Plaintiffs argue that, because the notice letter sent to each Defendant (a) identified each provider to whom notice was sent (i.e., Defendants), (b) indicated that each provider received a HIPAA-

compliant authorization, and (c) stated that "Mr. Riley has executed a HIP[A]A-compliant medical authorization (enclosed herein) that authorizes you to obtain Mr. Riley's complete medical records," Defendants were authorized to disclose Mr. Riley's records to one another, notwithstanding the omissions in Plaintiffs' HIPAA Authorizations.  (ECF No. 17-2 at PageID 75-76.)

In the Dismissal Order, the Court addressed Plaintiffs' argument that, according to guidance provided by HHS's website, cover letters can supplement HIPAA authorizations for purposes of permitting provider-defendants to share a patient's medical records with one another.  (ECF No. 55 at PageID 329-30.) Assuming without deciding that the HHS website's guidance was legal authority the Court could consider in its substantial-compliance determination under § 29-26-121(a)(2)(E), the Court noted that the HHS webpage instructed that cover letters can be used only to narrow a request, not to expand it.  (Id. at PageID 330.)  The Court noted that a Tennessee court had opined that a cover letter may be used to cure a blank portion of a HIPAA authorization form only if the letter explicitly authorizes the defendant to make any additions or changes to the authorization. (Id. (citing Bray).)  The Court concluded that Plaintiffs' notice letter did not give Defendants explicit authority to make additions or changes to Plaintiffs' HIPAA Authorizations.  (Id.)

Plaintiffs argue that, by leaving blank the portion of the HIPAA Authorizations designating to whom each Defendant could release Mr. Riley's records, the permission to release conferred by the Authorizations was maximally expansive, and the cover letter narrowed that permission to each of the three Defendants. (ECF No. 57-1 at PageID 359.)  That argument assumes that the Authorizations were actually HIPAA-compliant and permitted each Defendant to share Mr. Riley's records with **anyone** it wished. As discussed above, however, because of the omissions in the Authorizations, Defendants were permitted to disclose the records to **no one**.  Plaintiffs cite no authority that a cover letter can make a noncompliant HIPAA authorization compliant. Because a cover letter can only narrow a request, not expand it, it could not make Plaintiffs' noncompliant HIPAA Authorizations compliant.

In construing § 29-26-121(a)(2)(E), the Tennessee Supreme Court has recognized that the "penalties imposed upon covered entities that wrongfully disclose or obtain private health information in violation of HIPAA are . . . extremely severe." Stevens, 418 S.W.3d at 555 n.6.  As the Dismissal Order recognized, Tennessee law protects provider-defendants by sparing them the risk inherent in testing the sufficiency of a HIPAA authorization and by placing the burden of satisfying the

16

THCLA's pre-suit notice requirements on plaintiffs.  (ECF No. 55 at PageID 332, 334 (citing Stevens, 418 S.W.3d at 559).)

Plaintiffs' arguments that the Court misapplied HHS guidance or otherwise gave too little weight to language in the cover letter in its substantial-compliance determination are not well taken.

### C.    Reliance on Bray

Plaintiffs argue that, because Bray, a decision by the Court of Appeals of Tennessee, is now under review by the Tennessee Supreme Court, the "Court's reliance on [that] case" in the Dismissal Order "would prove problematic in the event of a reversal."  (ECF No. 57-1 at PageID 360.)

In support of the Motion to Dismiss, filed on May 6, 2016, Methodist cited Bray.  (ECF No. 17-1 at PageID 65.)  On June 23, 2016, the Tennessee Supreme Court granted Bray's application for permission to appeal.  See Bray, 2015 WL 7775316 (reflecting grant of application).  On September 22, 2016, the Court entered the Dismissal Order.  Between June 23, 2016, and September 22, 2016, Plaintiffs did not submit any supplemental authority notifying the Court that the Tennessee Supreme Court had granted Bray's application for permission to appeal.  To the extent Plaintiffs argue that the Court should not have relied on Bray in the Dismissal Order, Plaintiffs' argument could have been

17

raised prior to judgment and is not properly before the Court. See <u>Howard</u>, 533 F.3d at 475; <u>Jinks</u>, 250 F.3d at 385.

The Tennessee Supreme Court has not yet decided Bray's appeal. That court's grant of an application for permission to appeal is not "an intervening change in controlling law" warranting the Court's granting the Motion to Alter or Amend under Rule 59(e). See <u>Intera</u>, 428 F.3d at 620. The Tennessee Supreme Court's grant of an application for permission to appeal is not an "exceptional or extraordinary circumstance[]" warranting the Court's granting the Motion to Alter or Amend under Rule 60(b)(6). See <u>West</u>, 790 F.3d at 696-97.

Plaintiffs argument that it was error for the Court to rely on <u>Bray</u> lacks merit.

### D.   Prejudice to Defendants

Plaintiffs contend that the "Court did not consider or even discuss one-half of the required analysis as set forth by Tennessee appellate courts: prejudice." (ECF No. 57-1 at PageID 354.) Plaintiffs argue that "[t]here is nothing in the record or in the [Dismissal] [O]rder to show that this Court considered whether or not the Defendants had suffered prejudice as a result of the alleged deficiencies of the HIPAA release." (<u>Id.</u>) Plaintiffs argue that, "[i]f the Court had considered this required element, it would have found that there was no

18

prejudice suffered by the Defendants because each had access to the Plaintiff's medical records at all times."[3]   (Id.)

In the Dismissal Order, the Court both considered and discussed whether Defendants had suffered prejudice due to the HIPAA Authorizations' deficiencies.  In the Dismissal Order, the Court rejected Plaintiffs' argument that Methodist was not prejudiced "because Methodist 'is probably the only entity with actual records related to the malpractice,'" such that "'all records would be at Methodist.'"   (ECF No. 55 at PageID 334 (quoting MTD Response, ECF No. 24 at PageID 143-44).)  The Court explained that, even if it credited Plaintiffs' speculative argument and concluded that Methodist possessed all relevant records, thus suffering no prejudice itself, the HIPAA Authorizations would fail to comply with § 29-26-121(a)(2)(E). (Id.)  Due to the blank in the Authorization sent to Methodist, Methodist was not authorized to disclose its records to the Semmes Murphey Defendants and the Semmes Murphey Defendants could not request records from Methodist.   (Id.)  The Court explained that, under the THCLA, an "authorization must permit

---

3 Plaintiffs argue that "[a] finding that the pre-suit notice was not substantially compliant is not sufficient to warrant dismissal," and that "[t]o be entitled to relief, defendants must show that they have been prejudiced as a result of the allegedly defective HIPAA release."  (ECF No. 57-1 at PageID 345.)   To the extent Plaintiffs argue that the substantial-compliance inquiry and the prejudice inquiry are analytically distinct, Stevens forecloses that argument.   See Stevens, 418 S.W.3d at 556 ("In determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance.").

19

each provider 'to obtain complete medical records **from each other provider being sent a notice**.'"   (Id. at PageID 334-35 (quoting Tenn. Code Ann. § 29-26-121(a)(2)(E)).)

Plaintiffs now argue that "**all** Defendants had the actual means to evaluate the substantive merits of [Plaintiffs'] claim because they each, at **all** times, had access to Plaintiff[s'] medical records."   (ECF No. 57-1 at PageID 356.)   To support that argument, Plaintiffs rely on Defendants' responses to interrogatories.   (See id. at PageID 354-56.)

Plaintiffs' new factual argument is not properly before the Court.   Plaintiffs did not raise that argument in their MTD Response.   In that Response, other than speculating that Methodist had all the relevant medical records in its possession, Plaintiffs' only prejudice argument was as follows: "The Defendant[s] ha[ve] produced no evidence of prejudice whatsoever; specifically, there is no proof or even allegation made that any provider failed or refused to accept Defendant's request for Plaintiff's medical records."   (ECF No. 24 at PageID 147.)

By August 31, 2016, Plaintiffs received all of Defendants' interrogatory responses on which they now rely.   (See ECF No. 57-2 at PageID 374, 386; ECF No. 57-3 at PageID 417.)   The Dismissal Order was entered on September 22, 2016.   In the weeks between Plaintiffs' receipt of Defendants' interrogatory

responses and entry of the Dismissal Order, Plaintiffs did not supplement the record or otherwise notify the Court of the new evidence Plaintiffs now argue was relevant to the Court's consideration of the Motion to Dismiss and Motion for Judgment. Plaintiffs' "new argument[] . . . could have been raised prior to judgment." Howard, 533 F.3d at 475.

Even if Plaintiffs had timely raised their new argument, the interrogatory responses do not clearly establish that no Defendant suffered prejudice because all Defendants had pre-suit access to all relevant records, enabling them "to evaluate the substantive merits of [Plaintiffs'] claim[s]." Stevens, 418 S.W.3d at 554. Methodist may have had access to some of Mr. Riley's relevant records, but Methodist's interrogatory responses do not establish that it had access to any relevant records that might have been in the Semmes Murphey Defendants' possession.[4] (ECF No. 57-3 at PageID 404-05.) Even more problematic, given Plaintiffs' original assertion that "Methodist is probably the only entity with actual records related to the malpractice" (ECF No. 24 at PageID 143), Semmes

---

[4] In Hughes v. Henry County Medical Center, there was no prejudice to a provider-hospital from a HIPAA authorization that did not permit the hospital to obtain medical records from a treating physician because the physician "saw the patient only at [that hospital], and he had no records independent of the hospital's records." No. W2014-01973-COA-R3-CV, 2015 WL 3562733, at *1 (Tenn. Ct. App. June 9, 2015). The hospital conceded that it suffered no prejudice from an inability to access records in the physician's possession because the physician had no such records. Id. at *2. Methodist has not conceded that it possesses all relevant records and that the Semmes Murphey Defendants possess no additional relevant records.

Murphey's interrogatory responses do not establish that it has access to any records in Methodist's possession.  None of the interrogatory questions posed to Semmes Murphey asked whether it had records in Methodist's possession.[5]  (See generally ECF No. 57-2 at PageID 375-86.)   Plaintiffs' evidence is at best ambiguous and falls well short of the "clear and convincing" standard they must meet to warrant relief from the Judgment. See Info-Hold, 538 F.3d at 454.

Plaintiffs argue that Defendants "must show that they have been prejudiced as a result of the allegedly defective HIPAA release."  (ECF No. 57-1 at PageID 345.)  Even were Plaintiffs not held to a heightened evidentiary burden under Rule 59(e) or Rule 60(b)(6), the authorities Plaintiffs cite do not establish that Defendants carry the burden of proving prejudice.   In Hamilton, the Court of Appeals reversed the trial court in part because nothing in the record supported the trial court's finding that defendants were prejudiced.  487 S.W.3d at 120, 122.  In Hughes v. Henry County Medical Center, the court addressed whether a HIPAA authorization could be found not

---

[5] Plaintiffs suggest that Semmes Murphey had access to records in Methodist's possession because, in Dr. Michael's interrogatory responses, Dr. Michael stated in response to Question 20 that he had access "to medical records of patients, such as Mr. Riley, to whom [Dr. Michael] provides treatment at Semmes Murphey Clinic and Methodist University Hospital."  (ECF No. 57-1 at PageID 355.)  Plaintiffs assert that "Semmes Murphey incorporates Dr. Michael's responses."  (Id. at PageID 355 n.4.)   Although Semmes Murphey refers to Dr. Michael's answers in response to many of the questions posed to it, none of Semmes Murphey's answers refers to Dr. Michael's answer to Question 20.  (ECF No. 57-2 at PageID 375-86.)

substantially compliant where a defendant concedes it suffered no prejudice.  No. W2014-01973-COA-R3-CV, 2015 WL 3562733, at *2 (Tenn. Ct. App. June 9, 2015).  Hughes decided that a finding of substantial noncompliance was not warranted.  Id. at *5.  These decisions establish that, for a court to conclude that a HIPAA authorization is not substantially compliant, a court must find prejudice to defendants and the record must support that finding.  The Dismissal Order is consistent with that standard.

Plaintiffs also argue that "[t]he pre-suit notice requirements contained in Tenn. Code Ann. § 29-26-121(a)(2)(E) were never intended to nor do they create an environment in which defendants are permitted to do nothing . . . then, lie in wait in the weeds for the opportunity to seek dismissal of plaintiffs' action for an alleged technical, rather than substantive, failure on plaintiff's part."  (ECF No. 57-1 at PageID 351; see generally id. at PageID 356-57.)  Plaintiffs argue there is no evidence that Defendants attempted to procure Mr. Riley's records from one another and were denied.  (Id. at PageID 356.)  Plaintiffs add that "the minor shortcoming" with their HIPAA Authorizations "is easily curable by the Defendants."  (Id. at PageID 354.)

As discussed above, under Tennessee law, the burden is on the plaintiff, not the defendant, to satisfy the THCLA's pre-suit notice requirements.  A defendant is not required to test

the sufficiency of a HIPAA authorization or to risk a HIPAA violation.  Plaintiffs' argument ignores that in <u>Stevens</u> the Tennessee Supreme Court expressly rejected the plaintiff's argument that her failure to substantially comply with § 29-26-121(a)(2)(E) should be excused "because Defendants did not inform her that her medical authorization was deficient before filing a motion to dismiss."  418 S.W.3d at 559.  To the extent Plaintiffs argue that Defendants easily could have cured the omissions in the HIPAA Authorizations because the omissions were "technical, rather than substantive," Defendants had no obligation to cure.

In the Dismissal Order, the Court properly rejected the prejudice arguments Plaintiffs made in their MTD Response. Plaintiffs' failure to provide Defendants HIPAA compliant medical authorizations prevented Defendants from lawfully disclosing Mr. Riley's records to one another.  That failure deprived Defendants of "the actual means to evaluate the substantive merits" of Plaintiffs' claims prior to litigation. <u>Stevens</u>, 418 S.W.3d at 554.  Defendants suffered prejudice from Plaintiffs' noncompliance with § 29-26-121(a)(2)(E).

### E.    Time-Bar Ruling

Without citing any authority, Plaintiffs argue that the Court erred by "dismiss[ing] [this action] for failing to comply with the statute of limitations without a complete consideration

24

of the discovery rule." (ECF No. 57-1 at PageID 358.) In the Dismissal Order, the Court concluded that the "latest date the Court could reasonably find that Plaintiffs' injury accrued is October 12, 2014, when Mr. Riley returned to Methodist as a result of the leak from his skull and was diagnosed with bacterial meningitis." (ECF No. 55 at PageID 336.) Plaintiffs argue that "[i]t cannot be argued that, with certain[t]y, without exception, and without the need for further evidence or review, Mr. Riley should have known that medical malpractice had occurred at the time the Court said it did." (ECF No. 57-1 at PageID 358.)

In support of the Motion to Dismiss, Methodist argued that the limitations period for Plaintiffs' action had run, that the action was time-barred, and that the action should be dismissed with prejudice. (ECF No. 17-1 at PageID 67-71.) In the MTD Response, Plaintiffs did not address any of those arguments. The discovery-rule argument that Plaintiffs now raise could have been raised prior to judgment and is not properly before the Court. See Howard, 533 F.3d at 475; Jinks, 250 F.3d at 385.

Even if properly before the Court, Plaintiffs' argument does not establish a clear error of law warranting relief from the judgment. See Intera, 428 F.3d at 620. In this Circuit, a "complaint is subject to dismissal without any further proof if 'the allegations . . . show that relief is barred by the

applicable statute of limitations.'" <u>Surles v. Andison</u>, 678 F.3d 452, 458 (6th Cir. 2012) (alteration in original) (quoting <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007)).

Under Tennessee law, "the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." <u>Pero's Steak & Spaghetti House v. Lee</u>, 90 S.W.3d 614, 621 (Tenn. 2002). "The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct." <u>Id.</u>

In <u>Sherrill v. Souder</u>, 325 S.W.3d 584 (Tenn. 2010), the Tennessee Supreme Court discussed how the discovery rule applies in medical malpractice cases. The court explained:

> [A] medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. *A claimant* need not actually know of the commission of a wrongful action in order for the limitations period to begin, but *need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another*. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. *Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a*

26

> *prerequisite to the accrual of a medical malpractice*
> *cause of action*.

Id. at 595 (emphasis added).

As discussed in the Dismissal Order, Dr. Michael performed a biopsy on Mr. Riley at Methodist on October 2, 2014. (ECF No. 55 at PageID 318-19.)  Mr. Riley was discharged on October 9, 2014.  (Id.)  Plaintiffs allege that, when Mr. Riley was discharged, he had spinal fluid visibly leaking from the drilled opening in his skull.  (Id.)  Plaintiffs allege that Methodist employees were aware of the leak and failed to prevent Mr. Riley's discharge.  (Id.)  Plaintiffs allege that, on returning home, Mr. Riley suffered from an excruciating headache.  (Id.)  Plaintiffs allege that "Dr. Michael advised Mrs. Riley 'to simply apply pressure to the hole in Mr. Riley's head.'"  (Id. (quoting Compl., ECF No. 1 ¶ 19 at PageID 4).)  Plaintiffs allege that Mr. Riley became incoherent and was admitted to the intensive care unit at Methodist on October 12, 2014.  (Id.)  Mr. Riley had developed bacterial meningitis.  (Id.)  On the basis of the allegations in the Complaint, the Court concluded that the "latest date the Court could reasonably find that Plaintiffs' injury accrued is October 12, 2014, when Mr. Riley returned to Methodist as a result of the leak from his skull and was diagnosed with bacterial meningitis."  (ECF No. 55 at PageID 336.)

Plaintiffs' only basis for arguing that the allegations in the Complaint are inadequate to support the Court's ruling is that "Plaintiffs are not trained medical professionals and are certainly not neurologists or neurosurgeons." (ECF No. 57-1 at PageID 358.)  Plaintiffs cite no authority for the proposition that a court may not dismiss a medical malpractice action on statute-of-limitations grounds where a plaintiff is not a trained medical professional.  Given Sherrill's instruction that "[n]either actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action," 325 S.W.3d at 595, Plaintiffs' lack of medical training is not dispositive for purposes of applying the discovery rule in the context of medical malpractice.

Plaintiffs offer no alternative factual theory explaining when they reasonably would have been on notice that Mr. Riley's injury was the result of Defendants' wrongful conduct.  More specifically, Plaintiffs offer no theory that the first time Plaintiffs reasonably would have been on notice was less than a year before they filed this suit on January 28, 2016.  Given that Plaintiffs fail to suggest what "further evidence or review" might disclose, their argument that the judgment should

be set aside because the statute of limitations had not run is not well taken.

Plaintiffs suggest that the Court erred by dismissing Plaintiffs' action with prejudice on the basis of their failure to substantially comply with the THCLA's pre-suit notice requirements. (See ECF No. 57-1 at PageID 346 (citing Stevens, 418 S.W.3d at 560).)[6] The Court did not dismiss with prejudice solely on that basis. The action was dismissed with prejudice "in accordance with" the Dismissal Order. (ECF No. 56 at PageID 339.) In the Dismissal Order, the Court concluded, inter alia, that Plaintiffs' action was time-barred.

The Court did not err in ruling that Plaintiffs' action was time-barred. The Court did not err in dismissing the action with prejudice.

## IV. **Request for Oral Argument**

Plaintiffs request oral argument. Because the relevant facts are not in dispute and the parties have fully briefed all issues of law twice, Plaintiffs' request for oral argument is DENIED.

## IV. **Conclusion**

For the foregoing reasons, the Motion to Alter or Amend is DENIED.

---

[6] In Stevens, the court dismissed the action without prejudice where the plaintiff's HIPAA authorizations did not substantially comply with § 29-16-121(a)(2)(E). 418 S.W.3d at 560.

So ordered this 27th day of April, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE